IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

JUAN B. RODRIGUEZ-QUIÑONES,

**Plaintiff,**

**v.**

LEHIGH SAFETY SHOE, CO., *et al.*,

**Defendants.**

CIVIL NO. 09-1055 (FAB)

## OPINION & ORDER

BESOSA, District Judge

Before the Court is defendants' motion for summary judgment (Docket No. 35).  Having considered the motion for summary judgment, plaintiffs' response in opposition, and defendants' reply, the Court **GRANTS IN PART AND DENIES IN PART** the motion for summary judgment.

### DISCUSSION

I.  **Background**

A.  **Procedural Background**

On February 12, 2009, plaintiff Juan B. Rodriguez-Quiñones ("Rodriguez" or "plaintiff") filed an amended complaint against Lehigh Safety Shoe, Co. (Lehigh), Jim Murphy ("Murphy"), his wife, and their conjugal partnership (collectively "defendants").  (Docket No. 7 at ¶¶ 5-8.)  The amended complaint alleges claims of employment discrimination pursuant to the Age

Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621-634, Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e-2000e-15, 42 U.S.C. § 1983 ("section 1983"),[1] Puerto Rico Law 80 ("Law 80"), P.R. Laws Ann. tit. 29, §§ 185a-185m, Puerto Rico Law 100 ("Law 100"), P.R. Laws Ann. tit. 29, §§ 146-51, and Articles 1802 and 1803 of the Puerto Rico Civil Code ("Articles 1802 and 1803"), P.R. Laws Ann. tit. 31, §§ 5141-5142. Id. at ¶¶ 1-3. The amended complaint also alleges claims of retaliation pursuant to "[the Puerto Rico] whistler blower act [sic], state law against retaliation, and equivalent Federal Labor Laws (United States Code)." Id. at ¶ 3.

On June 25, 2010, defendants filed a motion for summary judgment arguing that:  (1) Rodriguez has failed to establish a prima facie case of age discrimination; (2) Rodriguez has failed to show that defendants' nondiscriminatory reason for terminating his employment is pretext for discrimination; (3) defendants have presented sufficient evidence to prevail on the Law 100 claim; (4) Rodriguez has failed to provide any evidence to support a claim under Title VII or section 1983; and (5) Rodriguez has failed to submit any evidence regarding protected conduct necessary to

---

[1] The amended complaint alleges violations of "Title VII and 42 of the United States Code, Section 1983, Civil Rights Act of 1964."  (Docket No. 7 at ¶ 1.)  Despite plaintiff's apparent attempt to conflate the two, Title VII and Section 1983 are, in fact, separate statutes and the Court addresses them as such in this Opinion and Order.

maintain his retaliation claims.   (Docket Nos. 35 & 35-55.)
Defendants also state that Rodriguez's administrative claims before
the Puerto Rico Anti-discrimination Unit ("ADU") and the Equal
Employment Opportunity Commission ("EEOC") were dismissed with
prejudice by those agencies.  (Docket No. 35-55 at 30-31.)   On
August 17, 2010, Rodriguez filed an opposition to the motion for
summary judgment arguing that:  (1) he had established a *prima
facie* case of age discrimination; (2) defendants' justification for
terminating his employment was pretext because, *inter alia*, he
committed no misrepresentation; and (3) comments allegedly made by
Murphy revealed an age-based discriminatory animus.  On August 31,
2010, defendants filed a reply.  (Docket No. 51.)

    **B.   Uncontested Facts**[2]

       Rodriguez was born on June 20, 1937.  (Docket No. 35-1 at
¶ 1; Docket No. 45-1 at ¶ 1; Docket No. 35-3.)   At fifty-seven
years old, Rodriguez started working for Lehigh on or around
February of 1995 in the position of District Sales Manager for
Puerto Rico.  (Docket No. 35-1 at ¶ 2-3; Docket No. 45-1 at ¶ 2-3;
Docket Nos. 35-3 & 35-4.)   In 2005, Rodriguez received a copy of
the 2005 Employee Handbook.  (Docket No. 35-1 at ¶ 4; Docket
No. 45-1 at ¶ 4; Docket No. 35-5.)   In 2006, the Employee Handbook
was revised to include a Progressive Disciplinary Policy

---

[2]   This factual background may not contain all facts
uncontested between the parties.  Other relevant uncontested facts
may be included in the Court's legal analysis as necessary.

establishing rules of conduct and different types of offenses. (Docket No. 35-1 at ¶ 5-6; Docket No. 45-1 at ¶ 5-6; Docket No. 35-6 at 18-22.)   Offenses categorized as "Type A" are considered extremely serious misconduct and may result in immediate suspension and/or termination of employment if those offenses occur while on Company time, on premises owned or occupied by the Company, on Company business, or while representing the Company.   Id.   One "Type-A" offense, listed as "A-13", is described as "[f]alsification or misrepresentation of any information while seeking employment or while in the employment of the company." (Docket No. 35-1 at ¶ 7; Docket No. 45-1 at ¶ 7; Docket No. 35-6 at 20.)   Rodriguez had seen a copy of the 2006 Employee Handbook at the time of his employment with Lehigh.   (Docket No. 35-1 at ¶ 8; Docket No. 45-1 at ¶ 8; Docket No. 35-7.)

On April 1, 2007, an Addendum to the Employee Handbook ("Addendum") was approved by Joseph A. Speach ("Speach"), Vice President of Human Resources.   (Docket No. 35-1 at ¶ 9; Docket No. 45-1 at ¶ 9; Docket No. 35-8.)   On June 7, 2007, Rodriguez acknowledged receiving a copy of the Addendum.   (Docket No. 35-1 at ¶ 10; Docket No. 45-1 at ¶ 10; Docket No. 35-9.)   The Addendum provides for a personal leave of absence, stating "[y]ou may be granted a Personal Leave of up to 30 days for compelling personal reasons with the written approval of your supervisor and Human Resources."   (Docket No. 35-1 at ¶ 11; Docket No. 45-1 at ¶ 11;

Docket No. 35-8 at 11.)  When distributing the Employee Handbook and Addendum, it was customary for Speach to conduct a conference call with Rodriguez to discuss and explain everything included in these documents, before sending him a copy of the Handbook and Addendum.  (Docket No. 35-1 at ¶ 12; Docket No. 45-1 at ¶ 12; Docket No. 35-10 at 2.)

From August through December of 2006, Rodriguez told his supervisor, Murphy, on various occasions that due to his wife's illness and medical treatment he was planning to either take an extended leave of absence or retire.[3]  (Docket No. 35-1 at ¶ 13; Docket No. 45-1 at ¶ 13; Docket No. 35-11.)  Murphy asked Rodriguez to stay with the Company for a couple of months until a replacement could be recruited.  (Docket No. 35-1 at ¶ 14; Docket No. 45-1 at ¶ 14; Docket No. 35-11.)  The Company immediately began recruitment efforts to find a District Sales Manager to replace Rodriguez upon his retirement.  (Docket No. 35-1 at ¶ 16; Docket No. 45-1 at ¶ 16; Docket No. 35-13.)  Rodriguez was aware that the Company had published ads in local newspapers to find candidates to take his position, and had originally given Murphy the telephone numbers of local newspapers for that purpose.  Id.  Advertisements were placed in *The San Juan Star* on October 15, 2006, and in *El Nuevo Dia* on

---

[3] Murphy was Rodriguez's supervisor from June of 2006 until Rodriguez's termination on April 3, 2008.  (Docket No. 45-1 at ¶ 50; Docket No. 51-1 at 5; Docket No. 45-3 at 3.)  As discussed later in the factual background, Murphy evaluated Rodriguez's performance once during that period.  See id.

December 3, 2006, for the position of District Sales Representative. (Docket No. 35-1 at ¶ 17; Docket No. 45-1 at ¶ 17; Docket No. 35-14.)

Rodriguez recommended his son Eric Javier Rodriguez to Murphy as a possible candidate for his replacement. (Docket No. 35-1 at ¶ 18; Docket No. 45-1 at ¶ 18; Docket No. 35-15.) During the search for his replacement, Rodriguez spoke to Murphy, who told him that none of the candidates that had applied for the position were qualified. (Docket No. 35-1 at ¶ 19; Docket No. 45-1 at ¶ 19; Docket No. 35-17 at 1.)

Rodriguez attended Lehigh's National Sales Meeting in December of 2006. (Docket No. 35-1 at ¶ 20; Docket No. 45-1 at ¶ 20; Docket No. 35-18.) At an awards ceremony held at the National Sales Meeting, Murphy announced that Rodriguez was retiring and presented him with a wristwatch as a retirement gift. Id. At the time of the National Sales Meeting, Rodriguez still intended to retire. Id.

On March 26, 2007, Luis Lopez ("Lopez") was recruited as Rodriguez's replacement and was to begin working on or before April 2, 2007. (Docket No. 35-1 at ¶ 21; Docket No. 45-1 at ¶ 21; Docket Nos. 35-19 & 35-20.) On April 3, 2007, Murphy informed Rodriguez that they had hired his replacement due to his earlier decision to retire from Lehigh and that the replacement would start employment immediately. (Docket No. 35-1 at ¶ 22; Docket No. 45-1

at ¶ 22; Docket No. 35-21.)   Murphy asked Rodriguez to continue working through June 29, 2007, to transition his responsibilities properly to the new District Sales Manager.   Id.   Murphy further communicated his appreciation to Rodriguez for deferring his retirement plans until he could recruit a replacement for Rodriguez's position.   Id.

On April 16, 2007, Murphy received a letter from Rodriguez's legal representative. (Docket No. 35-1 at ¶ 23; Docket No. 35-22; Docket No. 45-1 at ¶ 23; Docket No. 51-1 at 2.)   The letter stated that there had been a misunderstanding between Rodriguez and Murphy regarding Rodriguez's retirement.   Id.   It further stated that Rodriguez would not be retiring that year and did not request retirement.   Id.   The letter does, however, acknowledge that Rodriguez had spoken to Murphy three times between August and December of 2006, telling Murphy that his wife was ill with cancer and he had been thinking of requesting extensive leave or retiring.   Id.   The letter then states that in January of 2007, Rodriguez informed Murphy that his wife had finished her cancer treatment and he would no longer need to take any leave due to her medical condition.[4]   Id.

_____

[4] Lehigh submits the letter clearly stating this information as evidence, but denies that Rodriguez ever actually informed Murphy in January of 2007 that he would no longer need to retire or take leave due to his wife's medical condition.   (See Docket No. 51-1 at 2; Docket No. 51-3.)

After Rodriguez communicated his decision not to retire, Lehigh allowed both Rodriguez and Lopez to work as District Sales Managers in Puerto Rico. (Docket No. 35-1 at ¶ 24; Docket No. 45-1 at ¶ 24; Docket No. 35-23.)  On June 6, 2007, Murphy notified Rodriguez and Lopez of the territories and accounts they would respectively manage. (Docket No. 35-1 at ¶ 25; Docket No. 45-1 at ¶ 25; Docket No. 35-26.)  Murphy basically divided Puerto Rico into two territories; a northern territory assigned to Lopez and a southern territory assigned to Rodriguez.  Id.  In addition to visiting Puerto Rico, Murphy communicated with Rodriguez and Lopez through e-mail. (Docket No. 35-1 at ¶ 26; Docket No. 45-1 at ¶ 26; Docket No. 35-27.)

Murphy completed a performance evaluation of Rodriguez for the period beginning October 1, 2006 and ending September 30, 2007, which stated:

> Your sales are 88% of goal.  Your new account acquisition was very good.  Your call reports are always late if I get them.  And you have not used your laptop or blackberry to email anyone.  You'll need to share your appointment calendar with me by 11/12/07.  Get with our IT department to get this accomplished.  I want to see your weekly call reports by Saturday at noon EST.  You'll have to embrace and master your laptop and blackberry to be able to communicate with your customers and prospects more efficiently.

(Docket No. 35-1 at ¶ 27; Docket No. 45-1 at ¶ 27; Docket No. 35-28 at 2.)[5]   On November 27, 2007, Rodriguez wrote a memorandum to Murphy commenting on the specific areas in his performance evaluation with which he did not agree. (Docket No. 35-1 at ¶ 28; Docket No. 45-1 at ¶ 28; Docket No. 35-29.)   Murphy completed a performance evaluation of Lopez for the same period, which stated: "Your sales are 88% of Goal.  Keep working on government accounts and bids to generate new business.  Good job on you new account and acquisitions." (Docket No. 35-1 at ¶ 29; Docket No. 45-1 at ¶ 29; Docket No. 35-30 at 3.)   Lopez also sent a memorandum to Murphy expressing disagreement with portions of his performance evaluation.  (Docket No. 35-1 at ¶ 29; Docket No. 45-1 at ¶ 29; Docket No. 35-31.)

Lehigh provided Rodriguez with a laptop and a Blackberry, but he did not use the laptop very often because he had no internet service at his home. (Docket No. 35-1 at ¶ 30; Docket No. 45-1 at ¶ 30; Docket No. 35-32.)  After Rodriguez told Murphy that he could not get internet service at his home, Murphy asked Lopez to meet Rodriguez at Lehigh's facility in Ponce, Puerto Rico to get

---

[5]   Rodriguez claims that this was his only performance evaluation Murphy had performed regarding Rodriguez in the eleven years Rodriguez had been working for Lehigh. (Docket No. 45-1 at ¶ 27.)  Lehigh counters that Murphy had only been Rodriguez's supervisor for the evaluation period corresponding to this performance evaluation. (Docket No. 51-1 at 2-3.)  Given the incomplete and conflicting evidence submitted by the parties, a factual issue regarding the frequency of Rodriguez's performance evaluations remains contested.

Rodriguez internet service there.  (Docket No. 35-1 at ¶ 31; Docket
No. 45-1 at ¶ 31; Docket No. 35-27.)  Murphy also asked Lopez to
show Rodriguez how to complete his weekly report and prospect list
online so that Rodriguez could work from the center on Mondays.
Id.  Lopez responded that he had repeatedly attempted to help
Rodriguez, but would try again.  (Docket No. 35-1 at ¶ 32; Docket
No. 45-1 at ¶ 32; Docket No. 35-27.)

        On March 7, 2008, Rodriguez informed Murphy and Brenda
Hammond ("Hammond"), the Compensation and Benefits Manager, that he
would be traveling to El Paso, Texas the following Saturday because
his son had been in an automobile accident and would be
hospitalized from three to four weeks.  (Docket No. 35-1 at ¶ 33;
Docket No. 45-1 at ¶ 33; Docket No. 35-33.)  Rodriguez further
informed Murphy that he would return to work as soon as possible.
Id.  After ascertaining that his son's medical condition was not
serious, Rodriguez changed his mind and decided not to travel to
Texas.  (Docket No. 35-1 at ¶ 33; Docket No. 45-1 at ¶ 33; Docket
No. 35-34.)

        On March 10, 2008, Hammond sent Rodriguez a letter
indicating that Lehigh had granted him personal leave for a period
of thirty days, that he should return to work no later than
April 9, 2008, and that failure to return to work on time could
result in termination.  (Docket No. 35-1 at ¶ 34; Docket No. 45-1

at ¶ 34; Docket No. 35-35.)[6] On March 17, 2008, Rodriguez notified
Murphy and Hammond that he had fallen in his backyard and injured
his right ankle, leaving him unable to drive.  (Docket No. 35-1
at ¶ 35; Docket No. 45-1 at ¶ 35; Docket No. 35-36.)  Rodriguez
also sent Murphy and Hammond copies of his x-rays and a medical
certificate that recommended rest from March 19, 2008 to March 27,
2008.  Id.

On March 28, 2008, Hammond sent Rodriguez a letter
regarding his personal leave of absence to travel to Texas due to
his son's car accident.  (Docket No. 35-1 at ¶ 36; Docket No. 45-1
at ¶ 36; Docket No. 35-37.)  In the letter, Hammond noted that
although Rodriguez's personal leave of absence for travel was to
last thirty days, beginning on March 10, 2008, Rodriguez notified
Murphy and Hammond that he had been injured in his backyard on
March 17, 2008.  Id.  Hammond stated that Rodriguez was expected to
return to work upon returning from Texas, and would be required to
substantiate the need for his leave of absence by providing the
dates that Rodriguez traveled to Texas as well as a copy of the
receipt for his airline ticket.  Id.

Rodriguez was required to submit a Sales Report on a
weekly basis informing of all his activities during each week.

---

[6] Although the existence of this letter is uncontested, the
parties contest whether Rodriguez actually requested this leave of
absence, whether he actually took the leave of absence, and whether
he continued working during the period designated in that letter.
(See Docket No. 45-1 at ¶ 34; Docket No. 51-1 at 3.)

(Docket No. 35-1 at ¶ 37; Docket No. 45-1 at ¶ 37; Docket No. 35-38.)  These reports included all work related activity, including hours he worked and clients he visited.  Id.  If Rodriguez was sick, he was supposed to indicate on his weekly report, "No calls – sick."  Id.  The last Sales Report submitted by Rodriguez to Murphy covered the week ending on March 8, 2008.  (Docket No. 35-1 at ¶ 38; Docket No. 45-1 at 38; Docket No. 35-40; Docket No. 35-41.)[7]

     Rodriguez participated in a telephone conference with Theresa Ragosta ("Ragosta"), Employee Relations and Compliance Manager, and Murphy where he was informed by Ragosta that he was being terminated for "misrepresentation."  (Docket No. 35-1 at ¶ 39; Docket No. 45-1 at ¶ 39; Docket No. 35-43.)  His termination became effective on April 3, 2008.  Id.  On February 22, 2010, Lehigh closed operations in Puerto Rico and all of its employees were laid off.  (Docket No. 35-1 at ¶ 49; Docket No. 45-1 at ¶ 49; Docket Nos. 35-53 & 35-54.)

---

     [7] Plaintiff attempts to contest this fact by stating that "[t]he documents provided by defendants does not [sic] support the facts submitted."  (Docket No. 45-1 at ¶ 38.)  Plaintiff fails, however, to make any specific argument or citation to the record.  See id.  Accordingly, the Court deems this fact as admitted.  See Local Rule 56(c)-(e).

Civil No. 09-1055 (FAB)                                                    13

**II.  Legal Analysis**

 **A.   Summary Judgment Standard**

   The Court's discretion to grant summary judgment is governed by Rule 56 of the Federal Rules of Civil Procedure.  The rule states, in pertinent part, that the court may grant summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  FED.R.CIV.P. 56(c); see also Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 52 (1st Cir. 2000).  The party moving for summary judgment bears the burden of showing the absence of a genuine issue of material fact.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

   Once a properly supported motion has been presented, the opposing party has the burden of demonstrating that a trial-worthy issue exists that would warrant the Court's denial of the motion for summary judgment.  For issues where the opposing party bears the ultimate burden of proof, that party cannot merely rely on the absence of competent evidence, but must affirmatively point to specific facts that demonstrate the existence of an authentic dispute.  See Suarez v. Pueblo Int'l., Inc., 229 F.3d 49, 53 (1st Cir. 2000).

In order for a factual controversy to prevent summary judgment, the contested facts must be "material" and the dispute must be "genuine."  Material means that a contested fact has the potential to change the outcome of the suit under governing law.  The issue is genuine when a reasonable jury could return a verdict for the nonmoving party based on the evidence.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  It is well settled that "[t]he mere existence of a scintilla of evidence" is insufficient to defeat a properly supported motion for summary judgment.  Id. at 252.  It is therefore necessary that "a party opposing summary judgment must present definite, competent evidence to rebut the motion."  Maldonado-Denis v. Castillo-Rodriguez, 23 F.3d 576, 581 (1st Cir. 1994).

In making this assessment, the Court "must view the entire record in the light most hospitable to the party opposing summary judgment, indulging in all reasonable inferences in that party's favor."  Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990).  The court may safely ignore, however, "conclusory allegations, improbable inferences, and unsupported speculation."  Medina-Muñoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990).

**B.   Defendants' Reference to Administrative Proceedings**

Defendants state that Rodriguez's administrative actions before the ADU and the EEOC were dismissed with prejudice.  (Docket

No. 35-55 at 30-31.)   They have not, however, articulated an argument to accompany their recitation of the procedural history of Rodriguez's administrative proceedings related to his discrimination claims.   See id.   Defendants refer to no statute, regulation, or precedent to shed light on potential legal ramifications resulting from the administrative actions to which they refer.   Id.

      "Judges are not expected to be mindreaders. Consequently, a litigant has an obligation 'to spell out its arguments squarely and distinctly,' or else forever hold its peace."   Rivera-Gomez v. de Castro, 843 F.2d 631, 635 (1st Cir. 1998).   Defendants chose not to develop an argument based on the relevant administrative proceedings and the Court declines to divine one.   Accordingly, the administrative actions cited by defendants cannot currently serve as a basis to grant summary judgment.

**C.   Individual Liability under the ADEA**

      The complaint names Murphy as a defendant in his personal capacity with regard to plaintiffs' ADEA claim.   (See Docket No. 7.)   Although the First Circuit Court of Appeals has not squarely addressed the issue of individual liability under the ADEA, the courts of this district have repeatedly held that that liability does not exist.   See, e.g., Rivera-Tirado v. Autoridad de Energia Electrica, 663 F. Supp. 2d 36, 40-41 (D.P.R. 2009);

see also Fantini v. Salem State College, 557 F.3d 22, 28-32 (1st
Cir. 2009) (finding no individual liability under Title VII of the
Civil Rights Act of 1964 ("Title VII") and noting the similarity
between relevant statutory language of Title VII and the ADEA).
Accordingly, plaintiffs' ADEA claim against Murphy is **DISMISSED
WITH PREJUDICE.**

    **D.**    **ADEA Claim Based on Rodriguez's Termination**

        **1.**    **McDonnell-Douglas Burden Shifting Framework**

      "The ADEA makes it unlawful for an employer 'to fail
or refuse to hire or to discharge any individual or otherwise
discriminate against any individual with respect to his
compensation, terms, conditions, or privileges of employment,
because of such individual's age.'" Velez v. Thermo King de P.R.,
Inc., 585 F.3d 441, 446 (1st Cir. 2009) (citing 29 U.S.C.
§ 623(a)(1)).  ADEA plaintiffs must "establish that age was the
'but-for' cause of the employer's adverse action." Gross v. FBL
Fin. Servs., Inc., ___ U.S. ___, 129 S.Ct. 2343, 2351 (2009).
Direct evidence is not typically available to prove the requisite
causal relationship between discriminatory animus based on age and
an adverse employment action.  Velez, 585 F.3d at 446.  In the
absence of direct evidence of age discrimination, a plaintiff may
rely on circumstantial evidence to prevail on an ADEA claim.  Id.
at 446-47.

When relying on circumstantial evidence to prove employment discrimination, a plaintiff must make a *prima facie* case according to the <u>McDonnell-Douglas</u> burden-shifting framework. <u>Rivera-Aponte v. Rest. Metropol #3, Inc.</u>, 338 F.3d 9, 11 (1st Cir. 2003).  To establish a *prima facie* case under the ADEA in the context of a discriminatory discharge, the employee must show: (1) that he or she is over forty years of age; (2) that his or her job performance was satisfactory and met the employer's legitimate expectations; (3) that he or she suffered an adverse employment action; and (4) that the defendant "sought a replacement with roughly equivalent job qualifications, thus revealing a continued need for the same services and skills."  <u>See</u> <u>Gonzalez v. El Dia, Inc.</u>, 304 F.3d 63, 68 (1st Cir. 2002); <u>Serrano-Cruz v. DFI Puerto Rico, Inc.</u>, 109 F.3d 23, 25 (1st Cir. 1997); <u>Mesnick v. General Electric Co.</u>, 950 F.2d 816, 823 (1st Cir. 1991).  The required *prima facie* showing is not especially burdensome.  <u>See</u> <u>id</u>.

Once the plaintiff establishes a *prima facie* case, the burden of production shifts to the defendant-employer "to articulate a legitimate, nondiscriminatory basis for its adverse employment action."  <u>Torrech-Hernandez</u>, 519 F.3d at 48.  To be clear, this is not a burden of persuasion.  <u>Davila</u>, 498 F.3d at 16.  "[T]he employer need do no more than articulate a reason which, on its face, would justify a conclusion that the plaintiff was let go for a nondiscriminatory motive."  <u>Id</u>.  Once the employer satisfies

its burden of production, the presumption attending the *prima facie* case vanishes and the burden shifts back to the employee who must then show by a preponderance of the evidence that the reason given by the employer for the discharge is merely a pretext and that the real motivation for the adverse job action was age discrimination. Velazquez-Fernandez, 476 F.3d at 11; Gonzalez, 304 F.3d at 69. "In other words, the bottom-line question of discrimination *vel non* comes front and center. At summary judgment, this question reduces to whether or not the plaintiff has adduced minimally sufficient evidence to permit a reasonable factfinder to conclude that he was fired because of his age." Davila, 498 F.3d at 16 (citations omitted).

### 2.    Rodriguez's *Prima Facie* Case

Rodriguez must rely on the McDonnell-Douglas burden-shifting framework because he does not point to any direct evidence of age discrimination. See Velez, 585 F.3d at 446-47; (Docket No. 45.) Defendants concede that Rodriguez can establish the first three elements of a *prima facie* case, but argue that Rodriguez has failed to establish the fourth prong of a *prima facie* case of age discrimination. (Docket No. 35-55 at 11-13.) Defendants claim that they did not hire any additional District Sales Managers after Rodriguez's termination, thus removing any basis for Rodriguez's claim that he was replaced after his termination. (Docket No. 35-55 at 12-13.)

Rodriguez responds that Lopez, the District Sales Manager originally hired to replace him, ended up replacing him when he was eventually terminated by Lehigh. (Docket No. 45 at 5-7.) It appears from the uncontested facts, and defendants concede, that Lopez was originally hired as a replacement for Rodriguez as the sole District Sales Manager for Puerto Rico. (See Docket No. 35-1 at ¶ 21; Docket No. 45-1 at ¶ 21; Docket Nos. 35-19 & 35-20.) When the misunderstanding between Murphy and Rodriguez came to light, however, Murphy split what was formerly one Sales District into two, and Rodriguez and Lopez both worked as District Sales Managers in Puerto Rico for the approximately year-long period preceding Rodriguez's discharge. (See Docket No. 35-1 at ¶ 25; Docket No. 45-1 at ¶ 25; Docket No. 35-26.)

It is unclear what happened to the organization of Lehigh's sales operations after Rodriguez's discharge. Lehigh only claims that no one was hired to replace Rodriguez and that, nearly two years later, Lehigh closed operations in Puerto Rico and laid off all employees. (Docket No. 35-1 at 12.) It is settled law, however, that a plaintiff need not "prove that [his or her employer] hired a new employee or designated a current employee as [his or her] replacement . . . [or] that the replacement was new to the company or specially designated as such." Rodriguez-Torres v. Caribbean Forms Manufacturer, Inc., 399 F.3d 52, 59 (1st Cir. 2005) (internal citations omitted) (citing Loeb v. Textron, Inc., 600

F.2d 1003, 1013 n.11 (1st Cir. 1979)).  For the purposes of a *prima facie* case of discriminatory discharge based on age, Rodriguez is only required to demonstrate that he was replaced by someone with "qualifications similar to his own," who is also "substantially younger than" himself.  See O'Connor, 517 U.S. at 313; Williams v. Raytheon Co., 220 F.3d 16, 20 (1st Cir. 2000); Connell v. Bank of Boston, 924 F.2d 1169, 1173 (1st Cir. 1991).

            Although no specific evidence has been submitted by either party as to what occurred with the two sales districts between Rodriguez's termination and the Lehigh's decision to cease operations in Puerto Rico, a reasonable inference could be drawn that Lopez, the person originally hired to take over Rodriguez's duties upon Rodriguez's retirement, assumed those duties when Rodriguez actually left the company as a result of his discharge. Furthermore, Rodriguez points to evidence that he is approximately twenty years older than Lopez.  (See Docket No. 45-1 at ¶ 44; Docket No. 35-48.)  As noted above, the only evidence provided by Lehigh does not address what became of the duties associated with Rodriguez's position following his termination, but rather demonstrates only that no person was subsequently hired specifically to replace Rodriguez.  (See Docket No. 35-1 at 12.) Taken in conjunction with plaintiff's evidence that Lopez was significantly younger than Rodriguez and the record at this stage of the proceedings, the inference that Lopez assumed Rodriguez's

duties after April 3, 2008, is sufficient to defeat summary
judgment based on failure to establish the fourth prong of a *prima
facie* case of age discrimination.  See <u>Rodriguez-Torres</u>, 399 F.3d
at 59; <u>Williams</u>, 220 F.3d at 20; <u>Griggs-Ryan</u>, 904 F.2d at 115.

### 3.    Pretext and Discriminatory Motive

Defendants argue that they terminated Rodriguez's
employment for misrepresentation in violation of the terms of
Lehigh's employee handbook.  Specifically, defendants claim that
Rodriguez told Murphy and Hammond that he was going to take time to
visit his injured son in Texas, but upon learning that his son's
injury was not serious, failed to report to work or notify Lehigh
that he cancelled his travel plans.  Given this nondiscriminatory
reason proffered by Lehigh, Rodriguez must point to some evidence
that Lehigh's reason is pretext for discriminatory animus.  <u>See</u>
<u>Velazquez-Fernandez</u>, 476 F.3d at 11; <u>Gonzalez</u>, 304 F.3d at 69;
<u>Davila</u>, 498 F.3d at 16.

To prove pretext, a plaintiff may resort to numerous
means, including "showing 'weaknesses, implausibilities,
inconsistencies, incoherencies, or contradictions in the employer's
proffered legitimate reasons' such that a factfinder could 'infer
that the employer did not act for the asserted non-discriminatory
reasons.'"  <u>See</u> <u>Santiago-Ramos</u>, 217 F.3d at 56 (citing <u>Hodgens v.</u>
<u>General Dynamics, Corp.</u>, 144 F.3d 151, 168 (1st Cir. 1998)).
Rodriguez has introduced at least some evidence of weakness and

inconsistency in the nondiscriminatory reason articulated by defendants. (See Docket No. 45 at 7-8; Docket No. 45-4 at 17-20.) Rodriguez stated in his deposition that he called Hammond after ascertaining that his son's medical condition was not serious, told her that he would not be taking leave, and continued working from home. (Docket No. 45-4 at 17-20.) By presenting this evidence, Rodriguez has, to some extent, undermined defendants' nondiscriminatory reason and established a genuine issue of material fact with regard to pretext. See Santiago-Ramos, 217 F.3d at 56.

Even if Rodriguez has established that defendants' nondiscriminatory reason was pretext, however, he must still provide some evidence that it was pretext for **discrimination**. See Velazquez-Fernandez, 476 F.3d at 11; Gonzalez, 304 F.3d at 69. The only evidence Rodriguez points to in this regard are some allegedly discriminatory comments made by his supervisor, Murphy.[8]  Indeed, a plaintiff may establish that discriminatory animus by "showing

---

[8] Rodriguez points to other actions taken by Murphy as evidence of discrimination, such as "fail[ing] to provide a correct work environment, . . . discriminat[ing] against him, dividing the sales territories unequally, causing [Rodriguez] to loss [sic] part of his sales commissions, . . . [failing] to have proper communication with Rodriguez, . . . [and giving him a] strange Performance Appraisal[] . . . ." (Docket No. 45 at 9) (emphasis in original).  None of the actions listed, if true, are evidence of age-based discrimination, but rather appear to constitute independent adverse employment actions.  Because Rodriguez does not develop any argument as to claims based on those actions, the Court will not address them here.

that discriminatory comments were made by the key decisionmaker or those in a position to influence the decisionmaker." See Santiago-Ramos, 217 F.3d at 56 (citing Mulero-Rodriguez v. Ponte, Inc., 98 F.3d 670, 675-76 (1st Cir. 1996)). "'Stray workplace remarks,' as well as statements made either by nondecisionmakers or by decisionmakers not involved in the decisional process," however, "normally are insufficient, standing alone, to establish either pretext or the requisite discriminatory animus." Gonzalez v. El Dia, Inc., 304 F.3d 63, 69 (1st Cir. 2002.); see also Ortiz-Rivera v. Astra Zeneca LP, 363 Fed.Appx. 45, 47-48 (1st Cir. 2010). Furthermore, ambiguous statements which do not necessarily bear on a person's age do not suffice to prove discriminatory motive. See id.

Rodriguez claims that after Lopez's recruitment, Murphy gave him "some hints like . . . [t]hat [he] should resign because so [sic] [he could] take care of [his] wife." (Docket No. 45 at 9; Docket No. 45-4 at 6.)  These hints appear to be insufficient, on their own, to demonstrate discriminatory animus under the ADEA.  See Shorette v. Rite Aid of Maine, Inc., 155 F.3d 8, 13 (1st Cir. 1998) (finding a comment hinting at retirement to be "a textbook example of an isolated remark which demonstrates nothing"). Rodriguez has offered no clear evidence that Murphy was involved in the decision to terminate his employment.  Rodriguez only shows that Murphy was involved in the conference call during

which Rodriguez learned of his termination. (Docket No. 45-4 at 22.) The record in this case reveals that Ragosta was the person who actually informed Rodriguez of his termination during that conference call, and that Hammond sent the letter warning Rodriguez of potential termination for misrepresenation. (Docket No. 45-4 at 21-22.)

Even if Murphy was involved in the decision to terminate Rodriguez, it is not entirely clear that Murphy's comments reveal any age-based animus. (See Docket No. 45-4 at 6.) Murphy's comments, as related by Rodriguez himself, could plausibly be based on concern for the health of Rodriguez's wife, rather than Rodriguez's own age. Without any further evidence, Murphy's comments do not clearly "bespeak . . . age-based animus" in a manner sufficient to support Rodriguez's discriminatory discharge claim. See Gonzalez, 304 F.3d at 70.

Under the ADEA, the burden of persuasion falls on the plaintiff to show that an employer's nondiscriminatory reason for an adverse employment action, once articulated, is pretext for age discrimination. See Velazquez-Fernandez, 476 F.3d at 11; Gonzalez, 304 F.3d at 69; Davila, 498 F.3d at 16. By providing only ambiguous remarks as evidence of discriminatory animus, Rodriguez has failed to marshal the requisite evidence to maintain his ADEA discriminatory discharge claim. Accordingly, that claim is **DISMISSED WITH PREJUDICE.**

**E.   Section 1983 Claim**

Section 1983 provides an avenue for civil enforcement of a person's federal or constitutional rights.  See Rodriguez-Garcia v. Municipality of Caguas, 354 F.3d 91, 99 (1st Cir. 2004) (citing Baker v. McCollan, 443 U.S. 137, 144 n. 3 (1979)).  Section 1983 of Title 42 of the United States Code provides:

> Every person who, under color of any statute, ordinance, regulation, custom or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

"The very purpose of § 1983 was to interpose the federal courts between the States and the people, as guardians of the people's federal rights."  Mitchum v. Foster, 407 U.S. 225, 242 (1972).  "A claim under § 1983 has two 'essential elements':  the defendant must have acted under color of state law, and his or her conduct must have deprived the plaintiff of rights secured by the Constitution or by federal law."  Gagliardi v. Sullivan, 513 F.3d 301, 306 (1st Cir. 2008) (citing Rodriguez-Cirilo v. Garcia, 115 F.3d 50, 52 (1st Cir. 1997)).

The clear allegations in the complaint and the evidence submitted by the parties at this stage of the proceedings obviate any detailed section 1983 analysis.  As defendants point out in their motion for summary judgment, Rodriguez has not alleged, nor

Civil No. 09-1055 (FAB)                                              26

submitted any evidence suggesting, that Lehigh is anything other
than a private corporation.   (See Docket Nos. 7, 35-55, & 45.)
There is no indication anywhere in the record that Lehigh acted, or
attempted to act, under color of state law as contemplated under
section 1983.   See Zambrana-Marrero v. Suarez-Cruz, 172 F.3d 122,
125 (1st Cir. 1999).   (See Docket Nos. 7 & 45.)   Accordingly,
Rodriguez's section 1983 claim is **DISMISSED WITH PREJUDICE.**

   **F.   Title VII Disparate Treatment Claims**

        The amended complaint briefly cites to Title VII.
(Docket No. 7 at ¶ 1.)   Defendants interpret that citation as an
independent claim based on Rodriguez's discharge and argue that
Rodriguez has provided no evidence to support that claim.   (Docket
No. 35-55 at 24.)   Having examined the pleadings and the record at
this stage of the proceedings, the Court agrees.

        Title VII makes it unlawful for an employer "to discharge
any individual or otherwise discriminate against any individual
with respect to his compensation, terms, conditions, or privileges
of employment, because of such individual's race, color, religion,
sex, or national origin."   42 U.S.C. § 2000e-2(a)(1) (2000).   The
Court need go no further than Title VII's basic proscription of
employment discrimination.   The language limits the scope of the
statute to discrimination based on membership in the abovementioned
classes.   See id.   There is no indication in the complaint or any
of the pleadings on summary judgment that Rodriguez claims anything

other than employment discrimination on the basis of age. (See Docket Nos. 7 & 45.) Nor has Rodriguez submitted any evidence to that effect. (See Docket No. 45-1.) Accordingly, any claims of disparate treatment based on Title VII are **DISMISSED WITH PREJUDICE.**

###    G.   Retaliation Claims

Rodriguez asserts what appear to be retaliation claims pursuant to "[the Puerto Rico] whistler blower act [sic], state law against retaliation, and equivalent Federal Labor Laws (United States Code)." (Docket No. 7 at ¶ 3.) Reading the amended complaint generously, these retaliation claims could be interpreted to fall under Title VII, the ADEA, Puerto Rico Law 115 ("Law 115"), and Puerto Rico Law 69 ("Law 69"). See 29 U.S.C. § 623(d); 42 U.S.C. § 2000e-3(a); P.R. Laws Ann. tit. 29, § 194a(a); P.R. Laws Ann. tit. 29, § 1340. Defendants argue that these claims should be dismissed because Rodriguez has failed to point to any protected conduct that serve as a basis for any such retaliation claim. (Docket No. 35-55 at 28-30.)

Indeed, all of the statutes under which Rodriguez's claims could be said to fall require some sort of protected conduct on the part of the plaintiff. Title VII and the ADEA define protected conduct as "oppos[ing] any practice made an unlawful employment practice by [their respective] subchapter[s], or . . . [making] a charge, testif[ying], assist[ing], or participat[ing] in

any manner in an investigation, proceeding, or hearing under [their respective] subchapter[s]." 29 U.S.C. § 623(d); 42 U.S.C. § 2000e-3(a).  Under Law 115, an employee must "offer or attempt to offer, verbally or in writing, any testimony, expression or information before a legislative, administrative or judicial forum in Puerto Rico."  P.R. Laws Ann. tit. 29, § 194a(a).  Under Law 69, an employee must "file[] a complaint or charge, or [be] opposed to discriminatory practices, or participate[] in an investigation or suit for discriminatory practices."  P.R. Laws Ann. tit. 29, § 1340.

Rodriguez has failed to submit any evidence regarding any protected conduct on his part before or after Lehigh terminated his employment.  (See Docket No. 45-1.)  Nor does he even attempt to identify any protected conduct.  (See Docket Nos. 7 & 45.) Accordingly, Rodriguez's retaliation claims are **DISMISSED WITH PREJUDICE.**

### H.   Puerto Rico Law 100

To establish a *prima facie* case pursuant to Law 100, a plaintiff must "(1)demonstrat[e] that he was actually or constructively discharged, and (2) alleg[e] that the decision was discriminatory." Baralt v. Nationwide Mut. Inc. Co., 251 F.3d 10, 16 (1st Cir. 2001) (citing Cardona Jimenez v. Bancomercio de P.R., 174 F.3d 36, 42 (1st Cir. 1999)).  Once a plaintiff has established a *prima facie* case, "the burden shifts to the employer to prove by a preponderance of the evidence that it had 'just cause' for its

actions." Id. The burden of persuasion shifts back to the plaintiff only if the employer proves that it had "just cause" for its actions. Id. If the employer does not establish "just cause," then the employer "bears the burden of proving by a preponderance of the evidence that the decision was not motivated by age discrimination." Id.

Defendants do not argue that Rodriguez has failed to establish a *prima facie* case of age discrimination under Law 100 or that they have shown by a preponderance of the evidence that they had "just cause" Rodriguez's discharge. (See Docket No. 35-55 at 23-24.) They only argue that they have met the ultimate burden of persuasion for an employer in a Law 100 claim, i.e., showing by a preponderance of the evidence that there was no discriminatory animus behind the termination of Rodriguez's employment. See id. Judging from their brief argument to this effect, defendants appear to assume that the arguments and supporting evidence proffered regarding the Rodriguez's ADEA claim are sufficient to carry the burden of persuasion under Law 100. See id.

Defendants assume too much. Their cursory argument might carry more weight had defendants not voluntarily taken on the

ultimate burden of persuasion under Law 100.[9]  (See Docket No. 35-
55 at 24); Baralt, 251 F.3d at 16.  By framing their argument in
this manner, defendants have knocked any Law 100 analysis out of
parity with the ADEA, under which the burden of persuasion remains
with the plaintiff at all times.  See id. at 16 n.8.  Although
defendants recognize that they have taken on an enhanced burden in
comparison to a defendant's typical burden under the ADEA, they do
not tailor their arguments to this burden, cite to specific
exhibits, or cite to any additional case law.[10]  (See Docket No. 35-
55 at 24.)  In short, defendants do not clearly explain why the
evidence they previously used to satisfy the relatively light

_____

[9] Defendants skipped through significant portions of the Law
100 analysis and conceded any argument that Rodriguez's discharge
was for "just cause."  (See Docket No. 35-55 at 23-24.)  Had they
not done so, their reference back to arguments used in the context
of ADEA analysis may have eventually been appropriate given the
possibility that the ultimate burden proving discrimination could
have remained with Rodriguez under both standards.  See id.;
Baralt, 251 F.3d at 16-17.  Because the defendants chose not to
take that path, however, the Court will not independently follow it
here.

[10] Of particular concern is defendants' reuse of their argument
regarding Rodriguez's alleged misrepresentation of his use of
personal leave.  (See Docket No. 35-55 at 19-24.)  That argument
appears to be defendants' sole basis for claiming that they have
disproven discriminatory animus.  See id. at 24.  Demonstrating
that Rodriguez's termination was warranted under company rules
would appear to address more properly the issue of whether
Rodriguez was terminated for "just cause."  See Baralt, 251 F.3d
at 16-17.  Defendant makes no effort to explain to the Court why
the same argument and its supporting evidence would satisfy both
the burden of establishing "just cause" for discharge and the
burden of disproving the existence of any age-based discriminatory
animus.  (See Docket No. 35-55 at 23-24.)

burden of production under the ADEA suffices, at the summary judgment stage, to carry the much heavier burden of persuasion under Law 100.  See id.

As the Court has previously noted, the obligation is on the litigant to develop arguments clearly.  See Rivera-Gomez v. de Castro, 843 F.2d 631, 635 (1st Cir. 1988); United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) (applying a similar concept in the appellate context).  The Court declines further to develop defendants' argument, which, in its current form, is insufficient to carry the day on Rodriguez's Law 100 claim at this stage of the proceedings.  Accordingly, the request in the motion for summary judgment to dismiss Rodriguez's Law 100 claim with prejudice is **DENIED**.

## I.   **Remaining Puerto Rico Law Claims**

Along with Rodriguez's remaining Law 100 claim, the complaint also alleges supplemental claims pursuant to Law 80 and Articles 1802 and 1803.  (Docket No. 7 at ¶ 3.)  Although defendants do not address Law 80, Article 1802, or Article 1803 in the motion for summary judgment, the jurisdictional basis to maintain those claims and the Law 100 claim in this Court has been eroded by the dismissal of Rodriguez's federal claims.  (See Docket No. 35-55.)  Accordingly, the supplemental claims pursuant to Law 80, Law 100, and Articles 1802 and 1803 are **DISMISSED WITHOUT PREJUDICE** pursuant to 28 U.S.C. § 1367(c)(3).

Civil No. 09-1055 (FAB)                                                    32

**CONCLUSION**

For the reasons expressed above, the Court **GRANTS IN PART AND DENIES IN PART** the motion for summary judgment, (Docket No. 35). The motion for summary judgment is **GRANTED** as to Rodriguez's federal claims and his supplemental retaliation claims, which are **DISMISSED WITH PREJUDICE.**  The motion for summary judgment is **DENIED** as to Rodriguez's supplemental claims pursuant to Law 80, Law 100, and Articles 1802 and 1803 of the Civil Code.  Those claims are **DISMISSED WITHOUT PREJUDICE.**

**IT IS SO ORDERED.**

San Juan, Puerto Rico, September 9, 2010.

<u>s/ Francisco A. Besosa</u>
FRANCISCO A. BESOSA
UNITED STATES DISTRICT JUDGE